IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BENJAMIN MORALES-LOPEZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MUNICIPALITY OF NARANJITO, et al.,<br><br>Defendants. | Civil No. 12-1120 (GAG) |

## MEMORANDUM OPINION

Benjamin Morales-Lopez ("Plaintiff") sued the Municipality of Naranjito ("Municipality"), Orlando Ortiz-Chevres ("Ortiz"), Ruben Estrada-Diaz ("Estrada"), Marialis Figueroa-Negron ("Figueroa"), and Haydee Rivera ("Rivera") ("Defendants") under 42 U.S.C. § 1983 for political discrimination. (See generally Docket No. 1.) Defendants moved for summary judgment. (Docket No 49.) For the following reasons, the court **DENIES** Defendants' motion for summary judgment at Docket No. 49, but **GRANTS in a limited fashion**.

Plaintiff is a PDP affiliate who served as the acting Sargent at Arms of the Popular Democratic Party ("PDP")-controlled Naranjito Municipal Legislature and driver for the PDP Mayor, Manuel De Jesus Ortega, who was defeated in 2008 by Oritz-Chevres, the New Progressive Party ("NPP") candidate. (Docket Nos. 49-1 ¶¶ 1-3, 10-12; 49-2 at 24-25, 34-35.) After Ortiz's election, Plaintiff was reassigned to his original department of appointment at the

Civil No. 12-1120 (GAG)

Department of Public Works ("DPW") and was ordered to report to Estrada by Figueroa, the Municipality's Human Resources ("HR") director. (Docket Nos. 49-2 at 35; 58-3.)

According to Zoveida Negron Cotto ("Negron"), Clerk for the Municipality, job reassignments were tasks in which Mayor Ortiz and Figueroa collaborated. (Docket No. 61-5 at 17-18.) After reassignment, Plaintiff asserts that he was stripped of all of the functions and responsibilities of his new job because of his affiliation with the PDP. (Docket No. 49-2 at 58.) He claims Mayor Ortiz and Figueroa facilitated the stripping of functions by ordering the transfer and that his immediate supervisors, Rivera and Estrada, carried out the stripping of functions by prohibiting him from working. (Docket No. 49-2 at 38, 58, 69-71.) He consequently filed this claim for political discrimination in violation of the First Amendment.

## I. *Prima Facie* Political Discrimination

"Government officials are forbidden by the First Amendment from taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." Rodriguez-Ramos v. Hernandez-Gregorat, 685 F.3d 34, 40 (1st Cir. 2012) (quoting Ocasio-Herndandez v. Fortuno-Burset, 640 F.3d 1, 13 (1st Cir. 2011)). To state an actionable claim of political discrimination, a plaintiff's complaint must plausibly allege (1) he is not of the defendant's political affiliation; (2) defendants were aware of his affiliation; (3) an adverse employment action occurred; and (4) that political affiliation was a substantial or motivating factor for the adverse action. Id.; see also Lamboy-Ortiz v. Ortiz-Velez, 630 F. 3d 228, 239 (1st Cir. 2010).

"Defendants then must demonstrate that (i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional."

2

Civil No. 12-1120 (GAG)

Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 152 (1st Cir. 2006) (citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. at 286–287 (1977)).

    A.  Political Affiliation and Awareness of Affiliation

Plaintiff meets the first two requirements for establishing a *prima facie* political discrimination case. Plaintiff was an employee of the Municipality and was the former acting Sargent at Arms of the Municipality's legislature during a PDP administration. (Docket No. 49-1 ¶¶ 2-3.) He was also the chauffer for Manuel De Jesus Ortega, a PDP mayor. (Docket No. 49-2 at 24-25.) He is affiliated with the PDP. (Docket Nos. 49-1 ¶¶ 1; 49-2 at 34; 61-3 at 10.) Thus, he meets the first element of a *prima facie* case.

Oritz is an NPP mayor. (Docket Nos. 49-1 ¶ 15; 49-5 ¶4.) Estrada, the former Director of the DPW, is an appointee of Ortiz; therefore, a reasonable inference exists that he affiliated with the NPP. (Docket Nos. 49-1 ¶ 20; 49-5 ¶ 5; Torres-Santiago v. Mun. of Adjuntas, 693 F.3d 230, 236-237 (1st Cir. 2012). Estrada appointed Rivera to be Plaintiff's personal supervisor. (Docket No. 49-2 at 51-52.) Plaintiff contends that Rivera is affiliated with the NPP because, although she worked with Plaintiff at the Electoral College for the PDP, she stopped attending meetings, and is now in an NPP-appointed position of trust with the Municipality. (Docket No. 49-2 at 71.) Figueroa, the Director of HR, is also affiliated with the NPP. (Docket No. 61-1 at 31-32.) Therefore, Defendants are either loyal to Plaintiff's opposing political party or a genuine issue of fact exists as to their political affiliation.

Reasonable inferences abound indicating that Defendants knew of Plaintiff's political affiliation. (Docket Nos. 61-3 at 10; 61-1 at 17; 61-5 at 11; 61-6 at 7.) Plaintiff's three witnesses each testified that Naranjito is a small town where everyone knows or may infer others' political affiliations. (Docket Nos. 61-1 at 17; 61-6 at 7-8). Indeed, 2010 census data reveal that the

3

Civil No. 12-1120 (GAG)

Municipality comprised of 22,845 individuals 18 and over. See 2010 U.S. Census, Town of Naranjito, Puerto Rico, https://www.census.gov/2010census/popmap/ipmtext.php?fl=72 (last visited Mar. 17, 2014).

    Plaintiff's witnesses stated that employees in Plaintiff's office were required to attend NPP events and donate to the NPP. (Docket No. 61-6 at 7.) Some employees wore shirts bearing the names of their political parties. (Docket No. 61-6 at 8.) Employees took part in parades that went directly past their office so that everyone could see them; as a general matter, everyone knew others' political affiliations due to the Municipality's small size. (Docket Nos. 61-5 at 18; 61-6 at 7-8; 61 ¶ 94.) Furthermore, discussion of politics and teasing about politics took place outside of and at the workplace. (Docket Nos. 61-5 at 8; 61-6 at 8.) Lastly, Defendant was a political appointee in the Municipality's legislature when it was controlled by the opposing party and also drove Mayor Ortiz's opponent. (Docket No. 49-2 at 24-25, 34-35.)  It is reasonable to infer Defendants' knowledge of Plaintiff's political affiliation based on these factors. See Grajales v. P.R. Ports Auth., 682 F.3d 40, 47-48 (1st Cir. 2012) (discussing the plausible inference that people who have been named to politically appointed trust positions are members of the political party that appointed them); Torres-Santiago, 693 F.3d at 236-37 (plaintiffs can reasonably infer from supervisory trust positions in an NPP administration that their supervisors are members of – or are at least now– affiliated with the opposing party).

    B.  Adverse Employment Action

Actions short of discharge may satisfy the adverse employment action element. Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010); see also Welch v. Ciampa, 542 F.3d 927, 936 (1st Cir. 2008). It has been black letter law in the First Circuit since at least 1989 that reducing an employee's responsibilities because of his political affiliation violates the First

Civil No. 12-1120 (GAG)

Amendment.  See generally Agosto de Feliciano v. Aponte Roque, 889 F.2d 1209 (1st Cir. 1989) (en banc). Plaintiff's claim lies in the Municipality's ostensible reduction of his responsibilities from truck driver to laborer to nothing. (Docket No. 61 ¶ 34.) He was also denied the necessary tools to perform his job. (Docket No. 61 ¶ 9.) He marshals three witnesses who all say they observed him wandering around his place of work without any assignments, while NPP-affiliated colleagues were given all the work to do. (Docket Nos. 61-3 at 6, 22; 61-5 at 3, 5, 6, 10, 13; 61-6 at 2 & 3; 61-6 at 12-13). Elba Narvaez Chevres works in the Office of Transportation and testified that she saw Rivera yell at Plaintiff, that she would see him wandering around by the fence, and that he would come into her office crying because he did not have anything to do. (See Docket No. 61-6 at 2-3, 12.) Indeed, both parties acknowledge that Plaintiff was willing to do just about anything. (Docket Nos. 49-1 ¶ 34; 49-2 at 40; 61-1 at 13-14). It is uncontested that all of the laborers, regardless of political affiliation, were asked and expected to complete a variety of tasks, some of which were quite laborious. However, Plaintiff was purportedly discriminated against because he was left with nothing to do at all while everyone else was given work. (Docket Nos. 61-3 at 13; 61-6 at 12-13.)

    C.  Substantial or Motivating Factors for Adverse Action

"[P]robative of discriminatory animus is 'a politically charged employment atmosphere occasioned by [a] major political shift . . . coupled with the fact that plaintiffs and defendants are of competing political persuasions.'" Torres, 693 F. 3d at 240-241 (quoting Ocasio-Hernandez v. Fortuno-Burset, 640 F. 3d 1, 17-18 (1st Cir. 2011)). Puerto Rico law gives mayors the ultimate authority over municipal hiring and firing decisions. See P.R. LAWS ANN. tit. 21, §4109(o); Rodriguez v. Mun. of San Juan, 659 F.3d 168, 178 (1st Cir. 2011). The First Circuit has also provided guidance on the doctrine of supervisory liability by holding that "a supervisor . . . may

Civil No. 12-1120 (GAG)

be liable under section 1983 if he formulates a policy or engages in a practice that leads to a civil rights violation committed by another." Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 583 (1st Cir. 1994).

In this case, Negron, Clerk for the Municipality of Naranjito, testified that the Mayor and the Human Resources director collaborated to decide whether to open up the positions of driver and laborer. (Docket No. 61-5 at 17-18.) Three new drivers who were all affiliates of the NPP were hired. (Docket No. 61-1 at 21, 35.) According to Negron, it is common knowledge that the NPP accommodates campaign staff by rewarding them with employment and has been doing so for 15 years. (Docket No. 61-5 at 15.) Ortiz, furthermore, was involved in the daily activities at the DPW and would frequently visit the DPW. (Docket No. 61-3 at 20-21.) He gave Estrada his full support for any hiring or work place decisions. (Docket No. 61-6 at 13.) Therefore, like in Rodriguez, reasonable factual inferences indicate the possibility that Ortiz was involved in Plaintiff's reduction of responsibilities and that a triable issue of fact exists as to his participation. Rodriguez, 659 F.3d at 178.

Liability may also be imposed on the Municipality if the Mayor's employment decisions constitute the official policy of the Municipality. See Rodriguez-Garcia v. Miranda-Marin, 610 F. 3d 756, 770 (1st Cir. 2010). In Rodriguez-Garcia, Defendants maintained that the mayor could not be held liable because he did not know about Plaintiff's office complaint. See id. at 768. In this case, Plaintiff's complaints are well-documented with letters to Estrada and Ortiz. (Docket Nos. 49-2 at 38; 58-9; 61-3 at 3.) Plaintiff also met with his supervisors and the Mayor's assistants at a meeting on September 5, 2012; the meeting minutes document that (1) Plaintiff felt he was being treated poorly on the job site since the change in administration; (2) he often works as a laborer although several people who are not heavy truck drivers are assigned trucks;

Civil No. 12-1120 (GAG)

(3) his supervisor, Enrique Hernandez ("Hernandez") has always treated him with respect, but several employees make offensive comments on a regular basis; (4) fellow employees have started rumors about him causing trucks to break down; (5) that from this point on, he will only receive orders from his supervisor, Hernandez; and (6) that he just wants to work for the Municipality, and to do so in harmony with others. (Docket No. 61-4.) It is reasonable to state that a question of fact exists as to Mayor Ortiz's awareness of his advisors' actions, and that he may have had notice of Plaintiff's complaints. Rodriguez-Garcia, 610 F.3d at 768.

Therefore, Plaintiff has established a *prima facie* case for political discrimination.

**II. Defendant's Response**

The Municipality counters that Plaintiff had some behavioral problems, used foul language, and breached municipal employee rules. (Docket Nos. 58-4 ¶ 26-27; 58-5.) However, the Municipality itself admits that it consistently evaluated Plaintiff as a "good" or "excellent" employee. (Docket Nos. 49 at 22-23; 58-7.) It emphasizes that it never disciplined Plaintiff and never put any disparaging letters in his file. (Docket Nos. 49 at 22; 58-7.) The court thus sees a genuine issue as to why Defendants would leave Plaintiff behind. The claim persists.

**III. Defendants' Arguments**

A. Equal Protection

Plaintiff neglects to plead and craft an equal protection argument in his respective complaint and opposition to the summary judgment motion. This claim is dismissed. See U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). To the extent Plaintiff's argument for an equal protection violation and for violation of the First Amendment rely on the same facts, the First Circuit has determined that district courts should dismiss the equal protection claim and assess only the First Amendment claim. See Morales-Santiago v. Hernandez-Perez, 488 F.3d 465, 471 (1st Cir.

7

Civil No. 12-1120 (GAG)

2007); Ruiz-Casillas v. Camacho Morales, 415 F. 3d 127, 134 (1st Cir. 2005); Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F. 2d 32, 45 (1st Cir. 1992). The equal protection claim is dismissed.

   B.  Estrada Summons

The court expresses its sympathies as to the loss of Mr. Estrada. The court clearly does not expect for a deceased individual to appear before it. However, to the extent that his actions constituted unlawful political discrimination that may give rise to Municipal liability, they will be admissible so long as the methods by which they are proffered conform to the various rules of procedure and evidence.

   C.  Plaintiff's Spouse's Standing

Defendants are correct that section 1983 claims are intended to provide relief to the individual who suffered harm to his or her constitutional rights. As to only the federal claim, Plaintiff's spouse is dismissed without prejudice on this ground and because he has not argued it in any way, shape, or form. See U.S. v. Zannino, 894 F. 2d 1, 17 (1st Cir. 1990). The court dismisses without prejudice in the event that Plaintiff can marshal some governing law that reveals the court has erred. She remains a part of all state law-based claims.

   D.  Qualified Immunity

Defendants' request for qualified immunity is denied. See Davila-Torres v. Feliciano-Torres, 924 F. Supp. 359, 369-70 (D.P.R. 2013) (discussing denial of qualified immunity to government officials who allegedly stripped functions).

   E.  State Law Claims

Defendants' motion for summary judgment as to the state law claims is denied because they base their argument on the assumption that the court will dismiss the federal claims, thereby

Civil No. 12-1120 (GAG)

allowing it to dismiss state law claims brought under the umbrella of supplemental jurisdiction. Because the court denied the motion to summarily adjudge the First Amendment claim, this aspect of the motion is also denied.

F. Damages

Any issue as to damages shall be resolved at a later time should this case proceed to trial. The motion as to this claim is thus denied without prejudice.

**III.   Conclusion**

For the reasons discussed above, the court finds there is a genuine issue of material fact; thus, it **DENIES** Defendant's motion for summary judgment at Docket No. 49, **GRANTING in limited fashion** as to the issues discussed above.

SO ORDERED.

In San Juan, Puerto Rico this 17th day of March, 2014.

/S/ Gustavo A. Gelpí
GUSTAVO A. GELPI
United States District Judge